**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS URIEL PLEITEZ-LOPEZ, aka Luis Raul Pleitez-Rios, <br><br> *Petitioner*, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> *Respondent.* | No. 16-73656 <br><br> Agency No. A205-319-371 <br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 12, 2019
Pasadena, California

Filed August 23, 2019

Before: Mary M. Schroeder and Susan P. Graber, Circuit
Judges, and Michael H. Watson,[*] District Judge.

Opinion by Judge Graber

---

[*] The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

## SUMMARY[**]

### Immigration

Granting Luis Pleitez-Lopez's petition for review of a decision of the Board of Immigration Appeals affirming an immigration judge's denial of a continuance for Petitioner to update his fingerprints with the Department of Homeland Security (DHS), the panel held that Petitioner's reliance on his lawyer's erroneous advice that he was not required to update his fingerprints was reasonable and constituted "good cause" to grant a continuance, and remanded.

Petitioner provided fingerprints to DHS before his first merits hearing, but was granted a continuance to file for relief. At a later hearing, the IJ reset Petitioner's case for a later date and instructed Petitioner that he must have his fingerprints retaken 60 days before that hearing or the IJ would find that he had abandoned his applications for relief. However, when his hearing date arrived, Petitioner had not provided the required fingerprints to DHS because his attorney's office had erroneously advised him that he was not required to do so. The IJ denied the continuance, and the BIA affirmed, concluding that Petitioner lacked good cause for failing to update his fingerprints because the IJ properly advised him of his obligation to update his fingerprints and the consequence for failing to do so.

The panel held that the BIA's decision to deny a continuance was an abuse of discretion in two ways. First,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the BIA failed to analyze all the factors set out by *Cui v. Mukasey*, 538 F.3d 1289 (9th Cir. 2008), which instructs the court to consider: (1) the importance of the evidence, (2) the unreasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted. Second, the panel held that the BIA analyzed the unreasonableness of Petitioner's conduct in an arbitrary and irrational manner. Contrary to the BIA, the panel concluded that Petitioner acted reasonably in relying on his lawyer's advice, explaining that Petitioner's reliance was especially reasonable because the lawyer's bad advice post-dated the IJ's instructions.

**COUNSEL**

Shawn J. Beam (argued), Los Angeles, California, for Petitioner.

Jane T. Schaffner (argued), Trial Attorney; Douglas E. Ginsburg, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

GRABER, Circuit Judge:

Petitioner Luis Pleitez-Lopez seeks review of the Board of Immigration Appeals' decision affirming the immigration judge's ("IJ") denial of a continuance for Petitioner to update his fingerprints with the Department of Homeland Security ("DHS"). Petitioner did not update his fingerprints because his lawyer advised him, incorrectly, that he was not required to do so. He contends that his reliance on his lawyer's advice was reasonable and constituted "good cause" to grant a continuance under 8 C.F.R. § 1003.29. We agree and grant the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, a native and citizen of Guatemala, entered the United States in 2002 without being admitted or paroled. In August 2012, the government placed Petitioner in removal proceedings. Petitioner conceded removability and sought various forms of relief.

Petitioner originally provided the required fingerprints to DHS in December 2013, before his first merits hearing. At that hearing, Petitioner's lawyer sought a continuance to file for cancellation of removal; he had learned only recently that Petitioner might meet the residency requirement for that form of relief. The IJ granted the continuance.

At a later hearing, the IJ accepted Petitioner's application for cancellation of removal and reset the case for a merits hearing in September 2014, when Petitioner's fingerprints

still would have been valid.[1]  But, at the September hearing, the IJ reset the merits hearing to May 2015 because he had "to do another case."  After resetting the hearing date, the IJ (through an interpreter) instructed Petitioner that he must have his fingerprints retaken 60 days before the May hearing or the IJ would find that Petitioner had abandoned his applications for relief.  The government's lawyer gave Petitioner a written set of fingerprint instructions, and Petitioner confirmed to the IJ that he understood the fingerprint requirement.

When the May 2015 hearing arrived, Petitioner had not provided updated fingerprints to DHS.  His lawyer's office, operating under the erroneous belief that DHS fingerprints remained valid for 18 months, told Petitioner that he need not submit updated fingerprints to DHS before the May hearing. Petitioner had, however, recently provided updated fingerprints to the California Department of Justice.  Thus, Petitioner mistakenly believed that he had complied with the fingerprint requirement, telling the IJ:  "I have to repeat this again, that I talked to my attorney and he said to me, 'These are the ones you need to take.'"

In light of the erroneous legal advice, Petitioner's lawyer requested a "brief continuance" for Petitioner to provide updated fingerprints, but the IJ denied the continuance.  The IJ repeatedly expressed disbelief that Petitioner had relied on his lawyer's advice over the IJ's contrary instructions at the earlier hearing.  "A misunderstanding!  I told him, very clearly gave him—have [sic] the trial attorney give him

---

[1] DHS fingerprints expire after 15 months, *Cui v. Mukasey*, 538 F.3d 1289, 1292 (9th Cir. 2008), so Petitioner's December 2013 fingerprints remained valid through at least part of March 2015.

written instructions and told him to follow those instructions." "Who does he believe, the judge or the lawyer? . . . You shouldn't have to even think about this."

The IJ held that Petitioner lacked good cause for failing to update his fingerprints, because Petitioner was "not reasonable in disregarding what the court instructed him to do even if his counsel gave him other instructions." The IJ also found that Petitioner's failure to obtain updated fingerprints burdened the government because, if DHS could not perform the corresponding background investigation, the government could not prepare adequately for the merits hearing. (But the government did not object when Petitioner requested a continuance.) The IJ deemed Petitioner's applications abandoned and granted him voluntary departure to Guatemala.

The BIA affirmed the IJ's decision that Petitioner lacked good cause for failing to update his fingerprints. According to the BIA, Petitioner lacked good cause because the IJ "properly advised [Petitioner] of his obligations to comply with the biometric processing requirements and the consequences for failing to do so." Petitioner timely sought our review.

## STANDARD OF REVIEW

"Where, as here, the BIA reviewed the IJ's factual findings for clear error, and reviewed de novo all other issues," we limit our review to the BIA's decision, except to the extent that it expressly adopted the IJ's opinion. *Singh v. Whitaker*, 914 F.3d 654, 658 (9th Cir. 2019). We review for abuse of discretion an agency's denial of a continuance. *Malilia v. Holder*, 632 F.3d 598, 602 (9th Cir. 2011).

DISCUSSION

Under *Cui v. Mukasey*, 538 F.3d 1289, 1295–96 (9th Cir. 2008), "it is clearly an abuse of discretion for an IJ to deny a request from an otherwise diligent applicant for a short continuance to submit fingerprints." That holding alone might resolve this case (despite *Cui*'s statement that "there are no bright-line rules for deciding when an IJ's denial of a continuance warrants reversal"). *Id.* at 1295. But *Cui* instructs us to consider four factors to assess whether the denial of a continuance constituted an abuse of discretion: "(1) the importance of the evidence, (2) the unreasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted." *Id.* at 1292.

The BIA considered only the unreasonableness of Petitioner's conduct and did not address the other factors or adopt the IJ's finding of a burden to the government. We hold that the BIA's decision to deny a continuance was an abuse of discretion in two ways. The BIA failed to analyze all the *Cui* factors and, in addition, analyzed the unreasonableness of Petitioner's conduct in an arbitrary and irrational manner. *See Hernandez-Velasquez v. Holder*, 611 F.3d 1073, 1077 (9th Cir. 2010) ("An error of law is an abuse of discretion."); *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011) ("The BIA abuses its discretion when its decision is arbitrary, irrational, or contrary to law." (internal quotation marks omitted)). We turn next to the *Cui* factors.

First, the fingerprint evidence was vital to Petitioner's applications because he could not obtain relief without an updated fingerprint check. *See Cui*, 538 F.3d at 1292–93 ("Thus, when the IJ denied her request for a continuance to

resubmit her fingerprints, he effectively pretermitted any hope Cui had of obtaining relief. Her case was over.").

Second, Petitioner acted reasonably in relying on his lawyer's advice that he did not need to update his fingerprints with DHS.

> For the alien unfamiliar with the laws of our country, an attorney serves a special role in helping the alien through a complex and completely foreign process. It is therefore reasonable for an alien to trust and rely upon an attorney's advice to such an extent that if an alien fails to show up to a hearing because of an attorney, we can say that this is an exceptional circumstance "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1).

*Monjaraz-Munoz v. INS*, 327 F.3d 892, 897 (9th Cir. 2003). Likewise, if an alien fails to provide updated fingerprints to DHS "because of an attorney," *id.*, the alien's reliance on the lawyer's advice may constitute the requisite "good cause" for a continuance under 8 C.F.R. § 1003.29. Here, because the lawyer's bad advice post-dated the IJ's instructions, Petitioner's reliance on the later advice was especially reasonable. For example, the fingerprint requirements might have changed since his last hearing, including by lengthening the period during which fingerprints were valid or by allowing the California Department of Justice to send fingerprints to DHS.[2]  If the lawyer's bad advice had

---

[2] *See Mendoza-Ortiz v. Holder*, 464 F. App'x 615, 617 (9th Cir. 2011) (unpublished) (holding that the IJ abused his discretion by denying a continuance to complete a "fingerprinting and background check" where

preceded the IJ's instructions, we might reach a different result.

Of course, the IJ warned Petitioner that he must submit updated fingerprints and that his applications would be deemed abandoned if he did not do so. The government cited several unpublished cases for the proposition that Petitioner behaved unreasonably because the IJ warned him of his obligations and the consequences of failing to comply. But none of those unprecedential decisions involved petitioners who failed to submit updated fingerprints because their lawyers told them not to do so *after* the IJ had given the fingerprint instructions. In other words, none of those petitioners demonstrated good cause for a continuance. By contrast, here Petitioner did show good cause; he relied on his lawyer's advice because of the special relationship between an alien who is navigating the complex immigration process and the lawyer who is helping him. *Monjaraz-Munoz*, 327 F.3d at 897. The BIA's emphasis on the IJ's instructions to Petitioner failed to account for that special relationship or for the fact that the lawyer's advice not to provide updated fingerprints *post-dated* the IJ's instructions to Petitioner.

Third, the inconvenience to the court of granting the continuance would have been minimal. *Cui* explained that granting a continuance in these circumstances "would not have resulted in any cognizable inconvenience to the court or

---

the petitioner's lawyer "told the IJ that his office had mistakenly advised [the petitioner] that he had completed all required background checks"). In concurrence, Judge Silverman wrote: "The lawyer's conduct here was inexcusable, but the client's reliance on his lawyer was not." *Id.* at 618 (Silverman, J., concurring). We are not bound by *Mendoza-Ortiz*, but we find its reasoning persuasive.

the government." 538 F.3d at 1295. Because the IJ already had reserved time for the May 2015 merits hearing, the IJ could have allowed Petitioner to present testimony without suffering any inconvenience.[3]  *Id.*  Then the IJ could have either "issued a tentative grant of relief conditioned on the submission and analysis of [Petitioner's] fingerprints" or "denied relief immediately."  *Id.*  The former option would have required merely "a brief hearing to hear the security check results" at a later date.  *Id.*  In the alternative, the record discloses no reason why a continuance without taking evidence would have inconvenienced the court.

Fourth, and finally, before his request for the fingerprint continuance, Petitioner had sought just one continuance (to file his application for cancellation of removal).  In *Cui*, we found that this factor weighed in the petitioner's favor even where she had "requested few continuances" before the continuance to submit fingerprints.  538 F.3d at 1295.  Thus, this factor weighs in Petitioner's favor because he also requested few continuances.

**Petition GRANTED and REMANDED for further proceedings consistent with this opinion.**

---

[3] The government argued that this case differs from *Cui* because Petitioner initially requested a continuance during the May 2015 hearing for a different reason—his witness was unavailable because she had to have her fingerprints taken that day.  That is true, but the BIA's decision relied *solely* on the absence of updated fingerprints.  And, even without his other witness, Petitioner still could have presented part of his case through his own testimony and the documentary evidence that he had previously submitted.