**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 1 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HERACLIO ROBLES-IXTLAHUAC, | No. 21-70378 |
| Petitioner, | Agency No. A205-004-706 |
| v. | |
| PAMELA BONDI, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 3, 2026
Seattle, Washington

Before: McKEOWN, PAEZ, and BRESS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge PAEZ.

Heraclio Robles-Ixtlahuac, a native and citizen of Mexico, petitions for

review of a Board of Immigration Appeals (BIA) decision dismissing his appeal of

an immigration judge's (IJ) order denying his application for cancellation of

removal. In assessing eligibility for cancellation of removal under 8 U.S.C.

§ 1229b(b), we review the BIA's application of the "exceptional and extremely

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

unusual hardship" standard to a given set of facts for substantial evidence. *See Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025). When reviewing for substantial evidence, "we must uphold the agency determination unless the evidence compels a contrary conclusion." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). We review questions of law, including due process challenges, de novo. *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014). Our review "is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (quoting *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. Under 8 U.S.C. § 1229b(b)(1)(D), an applicant who, as relevant here, "establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence," is eligible for cancellation of removal. In this case, substantial evidence supports the IJ's conclusion that the likely hardships faced by Robles-Ixtlahuac's children do not rise to the level of exceptional and extremely unusual. Under § 1229b(b), "the hardship must be out of the ordinary and exceedingly uncommon. It must deviate, in the extreme, from the norm." *Gonzalez-Juarez*, 137 F.4th at 1006. Here, the IJ observed that the financial hardship that would be experienced by Robles-Ixtlahuac's children "is the normal

21-70378

kind of financial hardship" that is expected when a parent who provides for his children leaves the country. Further, although Robles-Ixtlahuac's children were emotionally attached to him, the emotional hardship that would result from his departure was not exceptional or extremely unusual. The record does not compel a contrary conclusion.

Robles-Ixtlahuac argues that the IJ and BIA erred by "splitting the hardship determination between the youngest children and the oldest" and by failing to "focus[ ] on the totality of all the hardship to all the children." However, it was reasonable for the IJ to analyze the expected hardships of Robles-Ixtlahuac's older and younger children in this way, given that the children were not differently situated within each group. The older children lived separately from the younger children, and Robles-Ixtlahuac saw his older children less frequently than his younger children.

2. Robles-Ixtlahuac next argues that the IJ abused his discretion and violated his due process rights by denying him a 45-day continuance after his attorney stated that she was not ready to proceed because she was experiencing homelessness and mental health problems. "A petition for review will only be granted on due process grounds if '(1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected

3                                                          21-70378

by the alleged violation.'" *Zetino v. Holder*, 622 F.3d 1007, 1013 (9th Cir. 2010) (quoting *Ibarra–Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006)). And we have long held that prejudice is the key question when evaluating whether a continuance was improperly denied. *See, e.g.*, *Baires v. INS*, 856 F.2d 89, 93 (9th Cir. 1988) (evaluating whether the petitioner was prejudiced as a result of the IJ's denial of a continuance); *United States v. Mejia*, 69 F.3d 309, 316 (9th Cir. 1995) ("The most critical question is whether Mejia was prejudiced by the district court's refusal to grant his request for a continuance. We may not reverse unless the party whose request was denied suffered prejudice.").

Although we share the BIA's and dissent's concern with the IJ denying the continuance, Robles-Ixtlahuac has failed to demonstrate prejudice, as he was able to submit documents both before and after the denial of the continuance, in 2013, 2014, and during the final hearing in 2017. And both before the BIA and this court, Robles-Ixtlahuac never identified any other documents or evidence that he would have submitted in support of his application.[1] Robles-Ixtlahuac thus has not demonstrated

---

[1] The dissent suggests that continuing the case would have permitted Robles-Ixtlahuac to obtain medical records and mental health evaluations for his qualifying U.S. citizen children, and that he could not have presented this evidence at an earlier stage of the proceedings because obtaining this evidence is often "left to the final few months of preparation . . . to prevent records from becoming stale and avoid incurring additional costs to clients." But Robles-Ixtlahuac presented additional evidence in connection with the final, rescheduled IJ hearing in 2017. And in the many years since, he has not identified additional evidence that he would present.

that the denial of the continuance prejudiced him.

**PETITION DENIED.**[2]

---

Even if there was a concern about staleness of evidence at the time, that concern has long since dissipated.

[2] Robles-Ixtlahuac's motion to stay removal, Dkt. 1, is denied. The temporary stay of removal shall remain in place until the mandate issues.

*Robles-Ixtlahuac v. Bondi*, No. 21-70378

PAEZ, Circuit Judge, concurring in part and dissenting in part:

In light of the existing evidentiary record, I concur in the majority's holding that substantial evidence supports the IJ's denial of cancellation of removal. However, in my view, the agency abused its discretion in denying counsel's request for a 45-day continuance because she had been homeless for three months, was suffering from severe depression, had been unable to work on Robles-Ixtlahuac's case, and was unprepared for the merits hearing. I would therefore grant the petition for review in part and remand for further proceedings.

An IJ may grant a motion for a continuance for "good cause shown." 8 C.F.R. § 1003.29. In determining whether to grant a continuance, "the IJ—and, on appeal, the BIA—should consider . . . '(1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted.'" *An Na Peng v. Holder,* 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009)). The agency "abuses its discretion 'when it fails to . . . show proper consideration of all factors when weighing equities and denying relief.'" *Owino v. Holder*, 771 F.3d 527, 532 (9th Cir. 2014) (quoting *An Na Peng,* 673 F.3d at 1253).

1

At Robles-Ixtlahuac's merits hearing in August 2017, his counsel sought a 45-day continuance because she had been homeless during the preceding months, which had disrupted her treatment plan for "severe depression." She candidly informed the IJ that she had not been well enough to work on the case until a couple of weeks before the hearing, and a continuance would allow her to seek co-counsel to provide Robles-Ixtlahuac effective advocacy. The IJ denied the request, explaining that the next available hearing date was in 2020, and he couldn't "justify setting this case out any further in view of . . . how long it's already been pending."

The IJ abused his discretion by solely considering "the inconvenience to the court," and failing to "show proper consideration of all factors." *An Na Peng,* 673 F.3d at 1253 (internal quotation omitted); *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (finding an abuse of discretion where the agency "failed to analyze all the [*An Na Peng*] factors"). We have consistently refused to permit a "a myopic insistence upon expeditiousness in the face of a justifiable request for delay" to "render the [petitioner's] statutory rights merely 'an empty formality.'" *Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). This case is no different.

The agency's refusal to grant a continuance was a clear abuse of discretion; the relevant factors overwhelmingly weighed in favor of the request. First, Robles-

Ixtlahuac's conduct was reasonable. *An Na Peng,* 673 F.3d at 1253. He sought a continuance to secure effective representation, not to delay the administrative proceedings. *See Medina v. Garland*, 69 F.4th 1043, 1051 (9th Cir. 2023) (holding that second factor favored petitioner when "[t]here [was] no evidence that [his] request for a continuance was a surreptitious attempt to delay the proceedings"). Counsel, who was suffering from severe depression and had been homeless for three of the preceding five months, requested a 45-day continuance to seek co-counsel. When the court did not have a 45-day continuance available, Robles-Ixtlahuac did not act unreasonably by requesting the next available hearing date, rather than proceed to the merits with counsel who candidly informed the IJ she simply was "not ready for today."

Second, continuing the case would have permitted Robles-Ixtlahuac to obtain medical records and mental health evaluations for his qualifying U.S. citizen children. *An Na Peng,* 673 F.3d at 1253 (requiring consideration of the "nature of the evidence excluded as a result of the denial of the continuance"). To qualify for cancellation of removal, a petitioner must present evidence that his removal would cause "hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of a[] [petitioner] with close family members." *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001). Thus, evidence regarding the physical and mental health of a petitioner's

3

qualifying children, and their ability to maintain medical treatment or care upon his removal, is "vital to the success" of a cancellation of removal application. *Cui v. Mukasey*, 538 F.3d 1289, 1292 (9th Cir. 2008). At the time of his hearing, however, Robles-Ixtlahuac's counsel had not filed any documents or records regarding the physical and mental health of his qualifying children.

Before the BIA, counsel represented that with a continuance, Robles-Ixtlahuac could have obtained "mental health evaluations" and "medical records" for his qualifying children. This evidence could have demonstrated that Robles-Ixtlahuac's removal would cause his children extreme or exceptionally unusual hardship. For example, Robles-Ixtlahuac testified that one of his children has childhood diabetes, but no record evidence detailed the severity of diabetes, the scope of any treatment plan, or how Robles-Ixtlahuac's removal would affect the child's medical care. Without any record evidence probative of hardship "beyond that which is normally experienced in most cases of removal," the "case was over" when the IJ denied his request for a continuance. *Matter of Gonzalez Recinas*, 23 I. & N. Dec. 467, 472 (B.I.A. 2002); *Cui,* 538 F.3d at 1293. Thus, even if our framework for evaluating an IJ's denial of a continuance has a prejudice component, there was prejudice in this case.

In the majority's view, Robles-Ixtlahuac could have presented this evidence at an earlier stage in the proceedings. Before the BIA, counsel explained that

4

obtaining medical and mental health evaluations is left "to the final few months of preparation" for the merits hearing—in this case, the time period when counsel was unhoused—to prevent records from "becom[ing] stale" and "avoid incurring additional costs to clients."[1]  Indeed, had Robles-Ixtlahuac obtained medical and mental health evaluations of his children before his originally scheduled March 2015 hearing, this fear would have been realized, as the Government moved his hearing to August 2017 due to a priority case.

Third, Robles-Ixtlahuac had not previously sought a continuance.  The IJ held master calendar hearings on December 13, 2011, January 16, 2013, and March 12, 2014, and set the case for trial on March 31, 2015.  The merits hearing was moved to 2017 because the Government prioritized a different case—not because Robles-Ixtlahuac requested a continuance.  Given that previous "delays were a result of the government's requests and the IJ's busy calendar," "[i]t would be

_____

[1]     The majority responds that Robles-Ixtlahuac presented some additional evidence at his 2017 merits hearing.  But the evidence presented—birth certificates, letters of support, and tax filings—did not implicate these concerns, unlike mental health or medical evaluations.  That is, birth certificates and tax filings are fixed in time.  In contrast, medical testing and psychological evaluations of children quickly become outdated and require renewed testing and additional costs.  And contrary to the majority's claim that any "concern [of staleness] has long since dissipated," had Robles-Ixtlahuac obtained medical testing when he petitioned for review in 2021, any medical testing would have long since become stale in the intervening five years.

5

unfair to punish" Robles-Ixtlahuac for the "crowded docket of the immigration courts." *Cui,* 538 F.3d at 1295.

Because all factors decisively counseled in favor of granting Robles-Ixtlahuac's request for a continuance, I would grant the petition for review in part and remand for reconsideration.

\* \* \*

It was undoubtedly difficult for counsel to disclose to the IJ that she had been unhoused and was experiencing a mental health crisis. But counsel nonetheless did so, aware that Robles-Ixtlahuac should not be denied relief due to her difficult personal circumstances, and in compliance with her ethical obligations as an attorney, including the duty of candor towards the tribunal and the duty to "provide competent representation" to clients. Wash. Rules of Prof'l Conduct R. 1.1; *id.* R. 3.3. I write separately to highlight that the IJ should have granted a continuance in this case to permit Robles-Ixtlahuac to obtain effective advocacy— and that attorneys should not be incentivized to hide personal crises that impede their ability to competently represent clients in administrative and judicial proceedings.

For all of the above reasons, I respectfully dissent.